UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IDENTIFYSENSORS BIOLOGICS CORP., | ) ) ) | CASE NO.:  1:24-cv-01459 |
| Plaintiff/Counterclaim Defendant, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| GHAZI KASHMOLAH, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant/Counterclaim Plaintiff. | ) | |

Counterclaim Defendants IdentifySensors Biologics Corp., IdentifySensors Fresh Food Enterprises, LLC, Greg Hummer, Bruce Raben, and Matthew Hummer move this Court to dismiss the Amended Counterclaim Complaint.  (Doc. 20.)  Counterclaim Plaintiff Ghazi Kashmolah opposed the motion (Doc. 21), and Counterclaim Defendants replied (Doc. 24).  For the reasons stated herein, Counterclaim Defendants' Motion to Dismiss the Amended Counterclaim Complaint is GRANTED in part and DENIED in part.

Also before the Court is Counterclaim Plaintiff's Motion for Reconsideration of the Court's June 27, 2025 Order.  (Doc. 16.)  The Motion for Reconsideration is DENIED as moot.

## I.    BACKGROUND

### A.    Counterclaim Allegations[1]

Ghazi Kashmolah ("Kashmolah") resides in San Diego, California.  (Doc. 18 at ¶ 1.)  In January 2023, while Kashmolah was gainfully employed elsewhere, Greg Hummer, Matt

---

[1] The facts alleged in the Amended Counterclaim Complaint are taken as true for purposes of this motion.  *See Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017).

Hummer, and Bruce Raben ("Raben") spoke to Kashmolah about joining them at IdentifySensors Biologics Corp. ("IdentifySensors"). (*Id.* at ¶ 11.) Greg Hummer was Chief Executive Officer at IdentifySensors. (*Id.* at ¶ 4.) Matt Hummer was a co-founder of IdentifySensors. (*Id.* at ¶ 6.) Raben was President of IdentifySensors. (*Id.* at ¶ 5.) IdentifySensors Fresh Food Enterprises, LLC ("Fresh Food") was IdentifySensors' parent entity. (*Id.* at ¶¶ 8, 23.)

Greg Hummer, Matt Humer, and Raben wanted Kashmolah to commercialize IdentifySensor's breakthrough product. (*Id.* at ¶ 11.) They spoke to Kashmolah through an executive recruiter. (*Id.*) Before joining them, Kashmolah signed an NDA. (*Id.*) Kashmolah was shown a presentation to convince him to join IdentifySensors. (*Id.*) He was convinced to join IdentifySensors over other opportunities with more established products. (*Id.*) Kashmolah gave notice to his former employer. (*Id.* at ¶ 12.) Kashmolah later learned the presentation he was shown "deliberately misrepresented the product status in development, suggesting that the [IdentifySensors] graphene ink formulation was already successful, and that the product was ready for his help to lead them to commercialization and market access." (*Id.* at ¶ 11.)

On February 16, 2023, Kashmolah joined IdentifySensors as Chief Quality Officer, EVP of Regulatory Affairs. (*Id.* at ¶ 12.) IdentifySensors, Fresh Food, Greg Hummer, Matt Hummer, and Raben (collectively "Counterclaim Defendants") were each Kashmolah's joint employers. (*Id.* at ¶ 7.) Counterclaim Defendants were co-owners, partners, agents, joint venturers, and/or parent/subsidiary corporations of each other. (*Id.* at ¶ 8.)

As a condition of Kashmolah's employment with Counterclaim Defendants, he signed an Employment Agreement. (*Id.* at ¶ 13 (citing Doc. 1-1).) He signed the Employment Agreement in California. (*Id.* at ¶ 16.) The Employment Agreement provided, "This Agreement will be

governed by and construed in accordance with the applicable laws of the [sic] Ohio, without giving effect to the principles of that State relating to conflicts of law." (Doc. 1-1 at ¶ 20.) Exhibit C to the Employment Agreement provided that Kashmolah would receive options at 25,000 "per quarter at the end of each quarterly three month period of employment," an SEP retirement plan of up to $7,000 per year, three weeks paid vacation per year, and bonuses. (Doc. 18 at ¶ 13.)

Kashmolah worked in California for Counterclaim Defendants. (*Id.* at ¶ 18.) All areas under Kashmolah's leadership were progressing ahead of schedule. (*Id.* at ¶ 24.) He was promoted to Chief Operating Officer. (*Id.*) But the sensor ink product, which was under Matt Hummer's leadership, prevented the company from moving forward with clinical studies and resulted in huge costs. (*Id.* at ¶ 25.)

Kashmolah became aware that IdentifySensors misled their SEC/IRS filings of estimated regulatory and research and development expense tax deductions. (*Id.* at ¶ 28.) When reviewing the profit and loss report, Kashmolah identified items miscategorized as regulatory instead of research and development. (*Id.*) He raised his concerns with Hummer and with IdentifySensor's accountant and CFO. (*Id.*)

On December 14, 2023, Greg Hummer spoke with Kashmolah about the need to cut salaries. (*Id.* at ¶ 30.) On December 18, 2023, during a team meeting Kashmolah announced he planned to take vacation between December 22, 2023, and January 2, 2024. (*Id.* at ¶ 31.) The next day, Kashmolah discovered the "Go To Market Report" contained numerous exaggerations. (*Id.*) He provided redlines to the document. (*Id.*) He also made Greg Hummer and IdentifySensor's Chief Marketing Officer aware of his proposed changes. (*Id.*)

On December 27, 2023, Kashmolah received a call from one of his direct reports.  (*Id.* at ¶ 32.)  His direct report and another employee were locked out of the IdentifySensors system.  (*Id.*)  Although still on vacation, Kashmolah discovered he had also been locked out of the system.  (*Id.*)  Greg Hummer and Raben contacted Kashmolah.  (*Id.*)  Raben told him he was being laid off and his last day of employment would be January 10, 2024.  (*Id.*)  The purported reason for Kashmolah's termination was that IdentifySensors could no longer support his salary.  (*Id.*)  IdentifySensors offered Kashmolah a severance agreement, which he rejected.  (*Id.* at ¶ 34.)

### B.  Procedural History

On August 26, 2024, IdentifySensors filed this diversity action for declaratory judgment.  (Doc. 1.)  IdentifySensors seeks a declaration that Ohio law applies to this dispute and that Kashmolah is not entitled to any of his demands under the Employment Agreement.  (*See id.*)  On August 30, 2024, Kashmolah filed his own lawsuit in California state court.  (Doc. 7-4.)  On October 15, 2024, Kashmolah moved to stay this action based on the California state court action.  (Doc. 7.)  On May 6, 2025, IdentifySensors notified this Court that the California state court dismissed the action for lack of personal jurisdiction.  (Doc. 10.)  On May 14, 2025, this Court denied Kashmolah's motion to stay.  (5/14/2025 Order.)

Kashmolah answered the Complaint and asserted four counterclaims for wrongful termination under California law, wrongful termination in violation of public policy, breach of contract, and intentional misrepresentation.  (Doc. 12.)  He asserted his counterclaims against IdentifySensors.  (*Id.*)  He also added new parties as counterclaim defendants: Fresh Food, Greg Hummer, and Bruce Raben.  (*Id.*)  Kashmolah alleged IdentifySensors, Fresh Food, Hummer, and Raben were his joint employers.  (*Id.* at ¶¶ 56, 57.)  Although styled as a counterclaim complaint, Kashmolah did not move for joinder of the new counterclaim defendants.  Nor did he cite any Federal Rules of Civil Procedure.  He simply included an allegation that joinder of Fresh

Food, Hummer, and Raben was permissible because Kashmolah asserted a right to relief against them arising out of the same transaction, and questions of law or fact were common to all counterclaim defendants.  (*Id.* at ¶ 58.)

On June 27, 2025, this Court found the attempt to add counterclaims against the new parties was improper under Rule 14.  (6/27/2025 Order.)  The same day, Kashmolah filed a motion for reconsideration, asserting for the first time his counterclaims against the new parties were being filed under Rule 13(h), which permits the addition of a party to a counterclaim under Rules 19 and 20.  (Doc. 16.)  On July 2, 2025, IdentifySensors moved to dismiss Kashmolah's counterclaims.  (Doc. 17.)

On July 23, 2025, Kashmolah filed an Amended Counterclaim Complaint against IdentifySensors, Fresh Food, Greg Hummer, and Bruce Raben.  (Doc. 18.)  He also added Matt Hummer as a counterclaim defendant.  (*Id.*)  The Amended Counterclaim Complaint similarly alleges joinder is permissible but does not move for joinder or reference Rules 13(h), 19, or 20.  (*Id.* at ¶ 10.)  Kashmolah brings four amended counterclaims: (1) Wrongful Termination Under California Labor Code 1102.5 (against IdentifySensors and Fresh Food); (2) Wrongful Termination in Violation of Public Policy (against IdentifySensors and Fresh Food); (3) Breach of Contract (against IdentifySensors and Fresh Food); and (4) Intentional Misrepresentation (against Raben, Greg Hummer, and Matt Hummer).  (*Id.* at ¶¶ 36-65.)

On August 26, 2025, IdentifySensors, Fresh Food, Greg Hummer, Raben, and Matt Hummer moved to dismiss all four amended counterclaims.  (Doc. 20.)  The motion is fully briefed.  (Docs. 21, 24.)

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Under Rule 12(b)(6), a court must dismiss a complaint if it fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  To survive a Rule 12(b)(6) motion, the complaint must make out a plausible legal claim, meaning the complaint's factual allegations must be sufficient for a court "to draw the reasonable inference that the defendant is liable."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plausibility does not require any specific probability of success, but it does demand "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

When evaluating a motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).  But the court "'need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'"  *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).  A pleading that offers "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012)).  Nor does a complaint suffice if it "tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quotations and citations omitted).

**B.**     **Counterclaim One: Wrongful Termination Under California Labor Code § 1102.5 (against IdentifySensors and Fresh Food)**

"[A] federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits." *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (citation omitted).  "Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflict of Laws to govern choice of law in contract disputes." *Down-Lite Int'l, Inc. v. Altbaier*, 821 F. App'x 553, 554 (6th Cir. 2020) (citing *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015)).  "The appropriate analysis therefore begins with § 187, which instructs courts to generally respect choice-of-law provisions." *Wise*, 780 F.3d at 715.  "Under Ohio law, contractual choice-of-law provisions are valid and enforceable." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (quotations and citations omitted).  Paragraph 20 of the Employment Agreement provides: "This Agreement will be governed by and construed in accordance with the applicable laws of the [State of] Ohio, without giving effect to the principles of that State relating to conflicts of law."  (Doc. 1-1 at ¶ 20.)  Counterclaim Defendants assert the Ohio choice of law provision in the Employment Agreement applies to any dispute between Kashmolah and IdentifySensors.  (Doc. 20-1 at 220.)[2]

Kashmolah argues that even if Ohio law applies, his statutory claim is outside the scope of the choice of law provision.  (Doc. 21 at 240-41.)  To Kashmolah, the choice of law provision applies only to the interpretation of the Employment Agreement.  (*Id.*)  It is not broad enough to encompass his statutory wrongful termination claim, Kashmolah urges.  (*Id.*)  However, choice of law provisions almost identical to the one at issue here govern not just the interpretation of the agreement, but also disputes that are directly related to it, including contract and tort claims.  *See*

---

[2] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

*Adelman's Truck Parts Corp. v. Jones Trans.*, 797 F. App'x 997, 1000-01 (6th Cir. 2020) (choice of law clause stating "[t]his Purchase Order shall be governed by and construed in accordance with the laws of the State of Ohio" was sufficiently broad to encompass "any disputes, whether contractual or tortious," that "arose out of and [were] directly related to the Purchase Agreement"); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1991) (agreement language stating "'[t]his Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan . . . .' [c]learly [] refers to more than construction of the agreement; otherwise the first six words would be surplusage").

Here, Ohio law governs the construction of the Employment Agreement and disputes related to or arising out of it.  The Employment Agreement sets forth the terms and conditions of Kashmolah's employment, including potential termination.  There is no question that disputes related to his employment and termination arise out of or are related to the Employment Agreement.  Kashmolah's argument that the choice of law provision does not apply to his statutory claim also fails.  *See Adelman*, 797 F. App'x at 999-1001 (finding that choice-of-law provision applied to statutory claims).

Kashmolah also argues he declared the Ohio choice of law provision "void" under California Labor Code § 925.  (Doc. 21 at 242-43.)  Section 925 provides:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
>> (1) Require the employee to adjudicate outside of California a claim arising in California.
>>
>> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

(b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

California Labor Code § 925.  Kashmolah cites to two Central District of California cases and one California state court case in support of this argument.  (Doc. 21 at 242.)

But courts outside of California have not applied § 925 unless the court first finds that California law applies to the dispute.  *See Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 90-91 (S.D.N.Y. 2021) (finding that, if New York law applied to the employment contract at issue, § 925 "would not come into the picture at all"); *see also Ronnoco Coffee, LLC v. Castagna*, No. 21-CV-00071, 2021 U.S. Dist. LEXIS 41707, 2021 WL 842599, at *6 (E.D. Mo. Mar. 5, 2021) (collecting cases) ("district courts outside of California considering choice of law provisions and forum selection clauses have refused to apply § 925 when another state's law has been chosen by the parties"); *C.H. Robinson Worldwide, Inc. v. Traffic Tech, Inc.*, 60 F.4th 1144, 1150 (8th Cir. 2023) (holding that § 925 would not apply to California-based employees if the trial court determined that their claims arose out of their employment contracts, which selected Minnesota law); *Downing v. Neurovascular*, No. 18-cv-841, 2018 U.S. Dist. LEXIS 248981, 2018 WL 11473724, at *10 (W.D. Mich. Dec. 27, 2018) (considering injunctive relief, "California Labor Code Section 925—did not overcome the parties' bargained for choice of venue" because Michigan law likely applied).

Here, Ohio law applies to Counterclaim One and § 925 does not void the choice of law provision.  Kashmolah cannot state a counterclaim for wrongful termination under California Labor Code § 1102.5.  Counterclaim One is DISMISSED with prejudice.

**C.**     **Counterclaim Two: Wrongful Termination in Violation of Public Policy (against IdentifySensors and Fresh Food)**

Kashmolah brings Counterclaim Two in the alternative to Counterclaim One.  (Doc. 18 at ¶ 44.)  This counterclaim also fails.

A plaintiff must establish the following four elements for a wrongful termination in violation of public policy claim:

> (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*House v. Iacovelli*, 152 N.E.3d 178, 181 (Ohio 2020) (citations omitted).  The first two elements (clarity and jeopardy) are questions of law.  *Id.*

To satisfy the "clarity" element of his public policy claim, Kashmolah was required to identify the specific federal or state constitutional provisions, statutes, regulations, or common law that support the policy because "[a] court may not do so sua sponte."  *Romero v. City of Middletown*, 479 F. Supp. 3d 660, 674 (S.D. Ohio 2020) ("it is the plaintiff's burden to identify the public policy and the sources for that policy").  Kashmolah asserts his counterclaim is based on "[a] clear public policy prohibiting retaliation for complaining about employer violations of IRS and SEC laws and regulations."  (Doc. 18 at ¶ 45.)  He cites to "26 U.S.C §§ 7201 and 7206 as well as the Sarbanes-Oxley Act of 2002 ["SOX"]" as "example[s]."  (*Id.*)  Counterclaim Defendants argue these "examples" do not satisfy the clarity element.  (*See* Doc. 20-1 at 223-25.)

Even if clarity could be established, jeopardy could not.  Kashmolah believes his termination jeopardizes public policy "because employees are not encouraged to complain about [violations of IRS and SEC laws] if they could be terminated for such complaints."  (Doc. 21 at

244.)  He further asserts, without any supporting legal authority, that he "does not have an adequate remedy under any other statute."  (*Id.*)  This position is contrary to established law.

"The issue that most often arises under the jeopardy analysis . . . is whether the public policy tort should be rejected where the statute expressing the public policy already provides adequate remedies to protect the public interest."  *Collins v. Rizkana*, 652 N.E.2d 653, 660 (Ohio 1995).  "[T]here is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests."  *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) (quoting *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002) (availability of other statutory remedies precluded fulfilling the jeopardy element)).

"In analyzing the jeopardy element, the Court must 'inquir[e] into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim.'"  *Hanna v. Roehl Transp. Inc.*, No. 24-CV-4226, 2025 U.S. Dist. LEXIS 114206, 2025 WL 1685308, at *3 (S.D. Ohio June 16, 2025) (quoting *Wiles*, 773 N.E.2d at 531).  "If an existing 'statutory scheme contains a full array of remedies' that 'adequately protect society's interests,' then 'it is unnecessary to recognize a common-law claim' for wrongful discharge."  *Id.* (quoting *Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 42-43 (Ohio 2007) (jeopardy element not met where Federal Motor Carrier Safety Administration's whistleblower statute provided adequate remedy for wrongful discharge)); *see also Watson v. Ohio Ambulance Sols., LLC*, No. 20-CV-802, 2023 U.S. Dist. LEXIS 209498, 2023 WL 8119305, at *12 (S.D. Ohio Nov. 22, 2023), *R&R adopted*, 2023 WL 8718106 (S.D. Ohio Dec. 18, 2023), *aff'd*, No. 24-3046, 2024 WL 5340668 (6th Cir. Aug. 8, 2024) (jeopardy element not met where Title VII and Ohio Rev. Code § 4112.02 provided adequate remedies); *Kleinmark v.*

*CHS-Lake Erie, Inc.*, No. 07-cv-1512, 2008 U.S. Dist. LEXIS 52665, 2008 WL 2740817, at \*5-6 (N.D. Ohio July 10, 2008) (plaintiff could not state public policy wrongful discharge claim based on FMLA retaliation because adequate statutory remedy existed); *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational*, No. 08-CV-663, 2009 U.S. Dist. LEXIS 82760, 2009 WL 2973001, at \*7 (S.D. Ohio Sept. 10, 2009) (jeopardy element not met where plaintiff had adequate remedy under ADA); *Tracy v. Northrop Grumman Sys. Corp.*, No. 08-cv-126, 2009 U.S. Dist. LEXIS 19566, 2009 WL 690255, at \*5 (S.D. Ohio Mar. 12, 2009) (jeopardy element not met where False Claims Act and Ohio Whistleblower Protection Act adequately protected alleged public policy).

Under SOX, the statute creates a civil action for retaliation to protect whistleblower employees. *See* 18 U.S.C. § 1514A. A prevailing employee is entitled to "all relief necessary to make the employee whole." 18 U.S.C. § 1514A(c)(1). Accordingly, "SOX provides sufficiently broad and inclusive remedies which adequately protect the public policy embodied in that statute . . . ." *Stewart v. Everyware Global, Inc.*, 68 F. Supp. 3d 759, 765 (S.D. Ohio 2014) (plaintiff could not meet jeopardy element where plaintiff relied on SOX). The same goes for IRS whistleblower laws. Under 26 U.S.C. § 7623(d), employers may not retaliate against employees who provide information regarding alleged violations of the internal revenue laws. The statute allows an employee to bring an enforcement action and provides for "all relief necessary to make the employee whole." 26 U.S.C. §§ 7623(d)(2)-(3). The IRS statutory scheme provides sufficiently broad and inclusive remedies to adequately protect the public policy. And Ohio's whistleblower protection statute, Ohio Rev. Code § 4113.52, "provides adequate remedies so as to not jeopardize the public policy." *Tracy*, 2009 U.S. Dist. LEXIS 19566, 2009 WL 690255, at \*14.

Kashmolah cannot demonstrate that statutory remedies under SOX, IRS whistleblower protections, or Ohio whistleblower laws and regulations are inadequate.  Accordingly, Kashmolah's claim for wrongful termination in violation of public policy fails as a matter of law.  *See Hanna*, 2025 U.S. Dist. LEXIS 114206, 2025 WL 1685308, at *14.  Counterclaim Two is DISMISSED with prejudice.

### D.     Counterclaim Three: Breach of Contract (against IdentifySensors and Fresh Food)

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach."  *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (applying Ohio law) (citations omitted).

Kashmolah entered into the Employment Agreement with IdentifySensors and Fresh Food.  (Doc. 18 at ¶¶ 13, 53.)  He notes the Employment Agreement is attached to the underlying Complaint.  (Doc. 18 at ¶ 13; *see also* Doc. 1-1 at 11-34.)  Under Exhibit C to the Employment Agreement, Kashmolah claims he was to receive 25,000 options per quarter, an SEP retirement plan of up to $7,000 per year, three weeks paid vacation per year, and bonuses.  (Doc. 18 at ¶¶ 13, 53.)  Kashmolah asserts he fully performed under the Employment Agreement.  (*Id.* at ¶ 54.)  IdentifySensors and Fresh Food "breached the contract by not paying Kashmolah all of his vacation time, vested stock options, bonuses, and SEP retirement plan contributions."  (*Id.* at ¶ 55.)  Kashmolah claims he has been damaged by the breach.  (*Id.* at ¶ 57.)

Counterclaim Defendants argue Kashmolah failed to allege facts that plausibly support a breach of contract claim.  (Doc. 20-1 at 227-28; Doc. 24 at 256-57.)  To Counterclaim Defendants, he has not pled an entitlement to any of his claimed relief.  (*Id.*)  Kashmolah responds that whether any money is owed under the terms of the Employment Agreement is a

factual issue that cannot be decided on a motion to dismiss.  (Doc. 21 at 236-37.)  And there is no requirement that breach of contract claims be pled with particularity, Kashmolah urges.  (*Id.* at 236.)

In *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518 (6th Cir. 2012), the Sixth Circuit clarified what the plaintiff must allege to plead a plausible breach of contract claim.  There, the court found the plaintiff failed to state a breach of contract claim because the plaintiff merely alleged it had written agreements with the defendant, which contained terms that the defendant breached.  *Northampton*, 492 F. App'x at 522.  But, instead of attaching the contracts to the complaint, the plaintiff asserted it "no longer possessed copies of the [contracts]" and asked that it "be allowed to conduct discovery in order to obtain the contracts that would show [the defendant's] actions violated their agreement."  *Id.*  The court held that this was not enough to survive a motion to dismiss.  *Id.*  The plaintiff did not fulfill the "basic tenet of contract law" of identifying the written contract and term within it that was allegedly breached.  *Id.* (quotations and citations omitted).

Kashmolah's breach of contract claim does not have the same shortcomings as the *Northampton* plaintiff's breach of contract claim.  Kashmolah stated the parties entered into the Employment Agreement.  (Doc. 18 at ¶¶ 13, 53.)  He noted the Employment Agreement was attached to the underlying Complaint.  (*Id.* at ¶ 13.)  And he alleged IdentifySensors and Fresh Food breached the terms in Exhibit C to the Employment Agreement.  (*Id.* at ¶¶ 53, 55.)  Accordingly, Kashmolah satisfied applicable notice pleading standards.  *See* FED. R. CIV. P. 8(a)(2).  He pled a plausible breach of contract claim.  Counterclaim Defendants' request to dismiss Counterclaim Three is DENIED.

Although Kashmolah did not move for joinder under Rule 13, he may add Fresh Food as a counterclaim defendant to Counterclaim Three pursuant to Rule 13(h).[3]  IdentifySensors and Fresh Food must answer Counterclaim Three on or before January 2, 2026.

### E.    Counterclaim Four: Intentional Misrepresentation (against Raben, Greg Hummer, and Matt Hummer)

Counterclaim Defendants challenge the intentional misrepresentation counterclaim as both procedurally deficient and legally baseless.  (Doc. 20-1 at 229-31.)  They argue Kashmolah's attempted joinder of Raben, Greg Hummer, and Matt Hummer on a standalone fraud claim is deficient.  (*Id.* at 229-30; Doc. 24 at 257-58.)  Raben, Greg Hummer, and Matt Hummer are not parties to the original action.  (*See* Doc. 1.)  And IdentifySensors is not named as a defendant to this counterclaim.  (*See* Doc. 18 at ¶¶ 58-65.)

Kashmolah responds that joinder is proper because he may add a counterclaim against non-parties under Rule 13(h).  (Doc. 21 at 237-38.)  To Kashmolah, the Amended Counterclaim Complaint involves at least one party to the original suit—IdentifySensors.  (*Id.* at 238.)

Additional parties may be joined to a counterclaim under Rule 13(h).  FED. R. CIV. P. 13(h).  "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."  *Id.*  Pursuant to Rule 13(h), a counterclaim "cannot be directed *only* against a person who is not already a party to the original suit."  *M.F. v. Cleveland Metro. Sch. Dist.*, No. 23-CV-2308, 2024 U.S. Dist. LEXIS 193063, 2024 WL 4564423, at *14 (N.D. Ohio Oct. 24, 2024) (emphasis in original) (citing *DNA Health, LLC (NJ) v. LIV Health LLC*, No. 22-CV-00121-GFVT, 2023 U.S. Dist. LEXIS 27654, 2023 WL 2110882, at *2 (E.D. Ky. Feb. 17, 2023)

---

[3] The appropriate procedure is "a Rule 13(h) motion to join additional parties to a counterclaim under Rule 19 or 20."  *Lexington Streetsboro, LLC v. Geis*, No. 07-CV-02450, 2008 U.S. Dist. LEXIS 108090, 2008 WL 5723491, at *5 (N.D. Ohio Feb. 22, 2008) (citation omitted).  But "Rule 13 is remedial in nature, and must be construed liberally."  *Id.* at *6 (citation omitted).

("[c]laims directed only at a non-party are not counterclaims but an independent cause of action against the party to be joined") (quotations and citations omitted)).

Kashmolah is correct that non-parties to counterclaims may be joined pursuant to Rule 13(h), but only if IdentifySensors, a party to the original suit, is also a party to such counterclaims.  Where Counterclaim Three is asserted against both IdentifySensors and non-party Fresh Food, Counterclaim Four is only asserted against non-parties.  Accordingly, Counterclaim Four does not properly join Raben, Greg Hummer, and Matt Hummer as counterclaim defendants.

Notwithstanding the joinder issue, this counterclaim still fails under Rule 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  A plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quotations and citation omitted).  A plaintiff must allege "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA. P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (quotations and citation omitted); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 616-17 (6th Cir. 2024) (dismissing fraud claim for plaintiff's failure to plead when allegedly fraudulent statements were made).

Counterclaim Defendants argue Kashmolah has not met the heightened pleading standard for fraud claims.  (Doc. 20-1 at 230-31; Doc. 24 at 258.)  Kashmolah claims he "alleged when the statements were made, who made them, and what was said" in paragraphs 11 and 59 of the Amended Counterclaim Complaint.  (Doc. 21 at 239 (citing Doc. 18 at ¶¶ 11, 59).)  He alleges:

In January 2023, while Kashmolah was gainfully employed elsewhere and with other opportunities in the offer stage, Greg Hummer, Matt Hummer and Raben spoke to Kashmolah while he was in California through an executive recruiter regarding an employment opportunity to join them and commercialize their breakthrough product. Before joining them, Kashmolah signed an NDA. Kashmolah later learned that the presentation used to convince him to join ISB deliberately misrepresented the product status in development, suggesting that the ISB graphene ink formulation was already successful, and that the product was ready for his help to lead them to commercialization and market access. This misrepresentation by Counterclaim Defendants convinced Kashmolah to join ISB over other opportunities with more established product.

(Doc. 18 at ¶ 11.)  He further alleges "Raben, Greg Hummer and Matt Hummer intentionally misrepresented the product status in development of the graphene ink formulation, specifically suggesting that the ISB graphene ink formulation was already successful, and that the product was ready for his help to lead them to commercialization and market access."  (*Id.* at ¶ 59.)

At most, Kashmolah alleges he spoke with Greg Hummer, Matt Hummer, and Raben through a recruiter in January 2023.  On some unspecified date, Kashmolah was given a presentation to convince him to join IdentifySensors.  Kashmolah does not detail what the PowerPoint presentation stated, who drafted or provided the presentation, where or when Kashmolah viewed the presentation, or how the presentation "suggested" a successful product. He must do so to meet Rule 9(b)'s particularity requirement.  *See Frank*, 547 F.3d at 570; *Chesbrough*, 655 F.3d at 467; *Greer*, 114 F.4th at 616-17.  Additionally, Kashmolah asserts "Greg Hummer, Matt Hummer, and Raben" made the alleged misrepresentation.  (Doc. 18 at ¶ 59.)  He does not specify what each individual allegedly misrepresented.  "The 'particularity' requirement of Rule 9(b) precludes plaintiffs from 'lumping' allegations against multiple defendants together, and it requires them to identify which defendant 'made a particular misrepresentation.'"  *Detrick v. KCS Int'l Inc.*, 781 F. Supp. 3d 588, 623 (N.D. Ohio 2025) (quoting *Little Mt. Precision, LLC v. DR Guns, LLC*, No. 22-CV-1471, 2023 U.S. Dist. LEXIS 21665, 2023 WL 1816711, at *10 (N.D Ohio Feb. 8, 2023) ("the complaint improperly lumps the

Individual Defendants together without separating out which Individual Defendant made a particular misrepresentation")).  The allegations fall short of the particularity requirement. Kashmolah's counterclaim for intentional misrepresentation is DISMISSED without prejudice.

Finally, Kashmolah represents that if more particularity is needed he would like leave to amend his counterclaim.  (Doc. 21 at 239.)  Rule 15 generally provides leave to amend should be given freely.  FED. R. CIV. P. 15(a)(2).  But one sentence requesting amendment at the end of an opposition brief is inadequate.  *See Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304-05 (6th Cir. 2011).  "A request for leave to amend, 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'"  *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000)). Kashmolah has not properly presented a motion for leave to amend.

### F.     Motion for Reconsideration

On June 11, 2025, Kashmolah filed an Answer and Counterclaim Complaint against IdentifySensors and new counterclaim defendants.  (Doc. 12.)  On June 27, 2025, this Court found the attempt to add counterclaims against the new parties in the Answer and Counterclaim Complaint was improper.  (6/27/2025 Order (citing Doc. 12).)  The same day, Kashmolah filed a Motion for Reconsideration of the Court's June 27, 2025 Order.  (Doc. 16.)

On July 23, 2025, Kashmolah filed an Amended Counterclaim Complaint.  (Doc. 18.)  In light of the Amended Counterclaim Complaint, the Motion for Reconsideration of the Court's June 27, 2025 Order is DENIED as moot.

## III.   CONCLUSION

For the reasons stated herein, Counterclaim Defendants' Motion to Dismiss the Amended Counterclaim Complaint (Doc. 20) is GRANTED in part and DENIED in part.  Counterclaim

Plaintiff's Motion for Reconsideration of the Court's June 27, 2025 Order (Doc. 16) is DENIED as moot.  IdentifySensors Biologics Corp. and IdentifySensors Fresh Food Enterprises, LLC must answer Counterclaim Three on or before January 2, 2026.

**IT IS SO ORDERED.**

**Date:**  December 12, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE